317-0039, she's wearing a single night jacket by Stephanie Raymond v. David Cowan, announced by Amber Hopkins. What's happening? Good morning, Fairleigh, your honors, counsel, and may it please the court. My name is Amber Hopkins-Reed, and I'm with the Office of the State Appellate Defender. Here on behalf of the defendant, Mr. David Cowan, Cowan was convicted of unlawful possession of a firearm by a felon stemming from an otherwise lawful encounter at a Circle K gas station. Cowan was sought to suppress the man found in his car pursuant to an unlawful inventory search. Police justified the impound and the search of the car for three reasons. They said it contained evidence of a sexual assault, the defendant may have been intoxicated, and that the defendant was blocking the gas pump. The court ultimately denied the suppression motion, finding that the car could not be released to Mr. Cowan because, if he was possibly intoxicated, or if the car was a possible threat, this case now comes to the court on direct appeal. There are four issues that I raised in my brief, but today I will discuss only the first issue.  First issue, please feel free to ask. Looking at the issue I'll cover today, this case concerns the validity of an inventory search where the impoundment of the vehicle was unlawful, the search was not conducted in good faith, pursuant to standardized police procedures, and the warrantless search did not protect property, the public, or law enforcement from danger. Accordingly, this court should reverse the Circuit Court's decision denying Cowan's motion to suppress and reverse Cowan's conviction for unlawful possession of a weapon by a felon. Under Illinois law, a warrantless inventory search is lawful when three requirements are satisfied. First, the original impoundment must be lawful. Second, the search must be conducted in good faith, pursuant to standardized law enforcement procedures. And third, the purpose of the search must be to protect property, the public, or law enforcement from danger. The search here did not meet any of these stated requirements. Looking at the first element, an impoundment must be either supported by probable cause, or be consistent with the police's role as caretaker of the streets, and be completely unrelated to an ongoing criminal investigation. The impoundment of Cowan's car was unlawful for three reasons. The car was lawfully parked at the Thomas. There was no evidence of intoxication. And the possibility that fruits of a crime may be discovered is a reason to get a warrant, and is not a justification for an inventory search. Looking at the state's first justification, Cowan's car was not impeding traffic or a threat to public safety or convenience. The state cites to Mason for the proposition that law enforcement officers can remove from streets vehicles that are impeding traffic. However, Cowan's car here was neither on the street nor impeding traffic. Cowan's car was on private property. The car was lawfully parked. There's no testimony on the record that the car was a threat to public safety. And common sense says the opposite. It says that other cars were able to move freely because Cowan's car was lawfully parked at the Thomas. Further, the gas station never asked to have the defendant's car moved. And likely, there were other gas pumps available to the public so that convenience was not impacted. And, even if the car could have been impounded, the defendant should have been able to call someone or have moved the car himself. And this is both allowed under People v. Ferris and is encouraged in the statute under Section 11-1302 and Section 4-203. Can you tell us how broad and ordinarily is the word convenience to be interpreted? How broadly is convenience? Yeah, and what context have we got here that tells us about what convenience means? It basically does not describe what convenience means. I mean, I've not seen it. I need your help here. I have not seen it either, but, however, in Ferris, the court in that case found that even though that convenience wasn't met because the law enforcement officer stopped the car on a highway and he should have allowed the defendant to move the car off the highway and the inventory search at that point would not have been necessary. That same circumstance applies here. Under Ferris and under the statute, the defendant here should have been able to move the car. He could have pushed it or he could have driven it himself because, as I'll discuss, there's no evidence here that the defendant was actually intoxicated. Looking at the second element, the defendant was never arrested or detained for DUI. The law enforcement officer impounded the car because it equated smelling like alcohol with intoxication. However, alcohol could have been spilt on the defendant which would explain the smell and his shirtlessness. Overall, there was never any indication that the defendant was actually intoxicated. There was no portable breath test done. There were no field sobriety tests done. Officers didn't testify that the defendant was sweating or had bloodshot eyes. In fact, they didn't even testify that the smell of alcohol was coming from the defendant's breath. So it was feasible for officers to leave the car and take the defendant to perform field sobriety tests at the station with the defendant. Then, if the defendant was detained for DUI, they would be able to justify impounding and inventorying the vehicle under Section 4-203. However, these procedures never occurred in whenever followed. Instead, law enforcement officers preferred to impound and search the car because they claimed it was possible that evidence of a possible sexual assault could be found in the car, which in its own right cannot justify the search. And that leads into the third justification that spruce of the crime is not a sufficient reason to perform an inventory search. The state here conflates an impound with an inventory search. However, these are two distinct actions that require distinct justifications. The justification for the impound cannot justify the subsequent search. As I stated in my opening, an inventory search must be completely unrelated to an ongoing criminal investigation. The state even notes that the inventory search is not to be used as a probable cause and is not for the purpose of looking for proofs for crime. However, the state attempts to justify this inventory on the same very basis in at least nine different spots in their brief. The state repeatedly says that the warrantless search was justified because the defendant's car may have had possible evidence of a crime scene. Here, the impound may have been justified, but not the resulting search. An investigatory search allows that officers may tow for an investigatory search, but then they're obligated to get a warrant and then search the car, and that procedure was not followed here. So, the state's faulty analysis and the trial court's decision are both contrary to law and to the precedent cited in their own brief. For instance, in South Dakota v. Opperman, the court of the United States Supreme Court makes clear that for an inventory search to be reasonable, it cannot be a pretext for an inventory search, and searching for evidence of a crime is a quintessential investigatory search. So, for all these reasons, the impound of Calum's car was not lawful. Then, looking to the second element of the test, the search was not conducted in good faith pursuant to any reasonable standardized police procedures. Here, the state has collapsed this three-part test and failed to address this discrete element, that there was a standardized law enforcement procedure which justified the inventory search here. The state argues that this second element is met because the first and third elements are met, and you can see this on page 21 of their brief. While to protect property and the exercises of the law enforcement officers' community peer-to-peer functions are valid reasons to conduct either an inventory search or an impound, it... excuse me... they do not establish the legitimacy of the search. Only constitutional law enforcement procedures can do that, and the state has failed here to present any procedures at the motion hearing or even on appeal that supports its conclusion that the tow was made pursuant to standardized law enforcement procedures. Further, this... the search here was not conducted in good faith for the sheer fact that it was not conducted pursuant to any standardized procedures. You can see that cited in the Fairness. The apparent lack of standardized procedure gives law enforcement unbridled exercise of discretion and it creates a situation where law enforcement officers can opt for a tow in order to create the occasion for an inventory search. It is really a guise for an investigatory search, and that's exactly what's happened here. Thus, this court should find that the defendant's car was not inventoryed in good faith pursuant to any standardized law enforcement procedures. And looking at the final element, the purpose of the search here is pretextual. Inventory searches are proper absent a warrant and absent probable cause because they are not conducted as a part of a criminal investigation, but rather to protect the property, the public, and law enforcement officers. However, here, the state has argued at page 27 of its brief that the inventory was conducted because the car would have been left unattended and to collect evidence of a possible sexual assault. However, as cited in my briefs in People v. Yersini, the sheer fact that a car would be unattended is not a sufficient reason to allow for an inventory search and impound. And second, as stated previously, the collecting of evidence is not a sufficient justification of an inventory search. So, neither of these arguments fulfills the purpose of an inventory search, but rather supports a finding that the search was pretextual. Accordingly, this court should find that the inventory was not done to protect property, the public, or police. So if there are no questions... I have one question. It's a factual question. Was the ownership of the vehicle part of the stipulation? Do we know who owned the vehicle? So, in the stipulation, the defendant, I believe, because the evidence came out, they stipulated to the motion in Lemonet, so I believe for the purpose of this argument, we're agreeing that the evidence of the motion in Lemonet was sufficient to show that the defendant has standing to raise this Fourth Amendment issue. But, in terms of reasonable doubt on the offense of unlawful possession of a firearm, it was constructive possession. Right. Was the ownership of the vehicle ever introduced into evidence? Yes, so as to the second argument, the ownership of the vehicle was never introduced into evidence. The only evidence that the state put on was that hearsay evidence that a gas station attendant may have or believed that he saw the defendant coming from that car. Thank you. If there are no further questions, this Court shall reverse the Circuit Court's decision denying Callan's motion to suppress and reverse Callan's conviction for unlawful possession of a weapon by Callan. Thank you. Thank you, Ms. Hopkins. Ms. Raymond. This is Court, Your Honor. I'm counsel. My name is Becky Raymond. I'll be representing the people of the state during the morning semantic. Just to back up a little bit, just to kind of get some facts in there, the police were dispatched to the convenience station in the first place based off a 911 call where the defendant was seen leaving the car going inside the gas station without a shirt, acting suspiciously, but the 911 call noted that there was a half-naked, unconscious female in the front passenger seat of the car. When police arrived, the female was unconscious still despite several efforts to sort of arouse or awake her. She was then taken in an ambulance to a hospital. Just to speak to the first issue, the three criteria that counsel early covered, the impairment of the vehicle was locked on in this situation because the defendant's vehicle was blocking the gas pump. It is a convenience station, the purpose of which is to go get gas. With there being only a few gas pump stations at the convenience store, it's reasonable that they would remove the calls so it's not blocking the gas pump and threatening the public's convenience to this access to this station. What does that answer the question? How do you define what an accident is? How would you define convenience as a legal reason? Well, I mean, it's not specific. How would you define it? Well, common sense, in my common sense way to define it would be that it's convenient, meaning quick, no obstacles, get in, get out. In today's world, you pay at the pump most of the time. There's often no need to even go in the gas station. Sometimes the gas pumps alone are the entire service of the visit. So in this instance, I would say that convenience is, you know... Does it have a special, a momentous place that you can define? Excuse me, from a lay person's understanding to mine also. Is there anything you can tell me about a kind of a legal basis or background? Like I said, the convenience issue specifically is not really parsed out. Just that it's cited, you know, and also cites C. Clarke. They don't really define what is convenience. How does that operate in terms of the police's ability to sort of groom vehicles to speak to this convenience situation. Unfortunately, the case law is not clear, so I'm sort of left with the common sense analysis. My worry is it's kind of a fierce definition. Go ahead. As far as the protection of the police from danger or any claims of lost or stolen items, Officer Jones did testify to that on page 119 of the record. He references the fact that that is in fact part of the inventory search and why it's done. But if he wasn't under arrest, what would have been the police claim that they needed to inventory this vehicle to protect against lost or stolen items? They were inventorying the vehicle pursuant to the T.U.V. The T.U.V. for the purposes of removing it from blocking the gas pump. And then, of course, I'll get to the other reasons, but that was initially  pursuant to the T.U.V. But Mr. Conlon wasn't under arrest at that time. The record is sort of unclear on the issue and neither does the defendant raise it, but he was in a police car for questioning at some point and he was arrested at some point while he was at the gas station. However, the record is unclear on a specific time when he was arrested. But you're not claiming that this is a search incident to arrest, so would the logical conclusion be that at the time that they made the decision to look in the vehicle that he wasn't under arrest? It could very well be that he was not under arrest at that time. As you pointed out, we're not claiming that it's an incident to arrest. So then getting back to what would be the police argument, what would be their concern about lost or stolen items from a vehicle for someone who's not in their custody? Because they were going to take the vehicle. So the vehicle would have been in their possession. You're saying that they're going to take this vehicle. So that goes back to the convenience. So you have to have them coupled together? You're saying that the impound, the convenience function of removing the vehicle has to be coupled then with the concern for loss of property? So you have to have both? That's just one of the criteria for why. When the police are telling a vehicle they don't, I mean, look for any car. They don't just take it and leave it. It has to be inventory so that everything in the vehicle can be accounted for when that person then comes back to get the vehicle so that there are no claims of lost or stolen items or damage or any danger to the police as well. So that would be why. And then the vehicle was then towed So you are aware that that happens every time they call, hey, there's a car out on the interstate and if somebody tows it on an impound every time that happens that vehicle is searched? Well, of course, I can't speak to every single vehicle. But you just said that's what police do because they were having a vehicle impounded so towed and so then they have to do that to make sure that when they come back and get that vehicle but does that happen every time I see a vehicle with a sticker on it, a tow sticker on it on the interstate the police say, hey, this is going to be towed do they search those vehicles then? To a majority of police practices the vehicles are if the police are the ones who are towing the vehicle the vehicles usually are, there's an inventory search performed on the vehicle as just a matter of police practice and Jones testified to the police practice in this case that that was that was part of their practice so the vehicle was also just to speak to the possible crime scene aspect of it, it was towed to the lab court instead of the tow yard because there was there could have been evidence of a possible crime they arrived and this girl was unconscious in the car she was unable to speak to them as to why she was there what if anything had happened so if if there was a sexual assault committed there could be possible evidence in this car so that speaks to why they didn't just leave it or let someone else come and get it if there's evidence of a crime in this car they're not just going to let someone else come and pick it up so that's why it was towed to the lab court as opposed to a tow yard so counsel said it's fair, however the court found that the tow in that situation unreasonably prolonged the stop and we don't have that situation here what would have been the reason that even if the vehicle was impounded that they couldn't have gotten if it was because of a possible crime that the police couldn't have gotten a warrant the impound would have secured the vehicle and then if they felt it was a crime scene why wouldn't they have sought a warrant under the automobile exception due to the inherent mobility but an impounded vehicle is not mobile if police believe there's evidence if they have probable cause to believe there's evidence of a crime in the vehicle they can't search here the probable cause was this female who was in the passenger seat unconscious and half naked so that was their probable cause to search the car without a warrant additionally ownership of the vehicle just to speak to issue 2 defendant was seen leaving the vehicle when the police arrived he tried to get back in it under issue 2 reasonable doubt in constructive possession speaks to control of the vehicle and defendant had control of the vehicle his passenger was in the car as well how do we know it wasn't in her constructive possession to speak to control she was unconscious slight chance she would have any control she was not even awake had to be taken away in an ambulance so defendant maintained control that shows the knowledge the gun was there and the gun was found in the back seat in a pair of gray shorts is there an indication whether the shorts were men or women there is not in the record there is no indication of whether or not they were a pair of shorts it's the people's position that the trial court properly denied the defendant's motion to suppress thank you Ms. Raymond Ms. Hopkins any other questions just briefly your honors I'd like to touch on a couple of things that the state spoke on first and foremost I'd like to again highlight the fact that the justification for an impoundment is separate from the justification for an inventory search the state repeatedly states that the inventory was pursuant to the tow and the inventory is not automatic as Justice O'Brien stated it's not necessary in every circumstance for a vehicle to be impounded so there has to be a separate justification under the inventory search doctrine to impound the car and then to search the car and that was not done here when the state repeatedly cites that there could have been evidence of a possible crime in this car that may have been a justification they didn't prove that up here that it could have been impounded but that does not and cannot be a justification for an inventory search if they impounded the car because it could have contained evidence of a crime then they were obligated to obtain a warrant and then search not to create an end around my client's work amendment rights additionally under this possibility of having other evidence in the car the state cites an automobile exception however that exception requires probable cause which I noted in my reply brief that the state doesn't have here at page 19 of the state's brief at best they admit that they only have a reasonable belief that there may have possibly been a crime that was committed here next I'd like to touch on the blocking the gas station pump Justice Slitton I know that convenience seems to be something you're concerned about but even under those circumstances the law enforcement were obligated here under Schultz Valdez and Spencer to obtain or get the convenience the property owners consent or their will to have the vehicle towed which it never happened here it was never on the record that they discussed with the property owners that the property owners wanted the car towed so because it's private property and there is no indication that the car needed to be towed it doesn't meet that justification and finally I'd like to highlight under element 2 the state said here today in a little argument that it's the majority of law enforcement practice but they still cannot cite to a standardized police procedure that justified the tow here and for those reasons this court should find that the ambulatory tow was not lawful and they should find that the trial court erred when it denied the motion to suppress and so this court should reverse the defendant's conviction for unlawful possession of a weapon by default Thank you Thank you Ms. Hopkins and thanks both for your arguments today We will take this matter under advisement and get back to you with a written disposition